So we'll hear argument in the first argued case on today's calendar. Kee v. The City of New York et al. 22201. Mr. Loomer. Good morning, your honors. May it please the court, my name is Michael Loomer and I represent plaintiff appellant Tito Kee. Plaintiff is appealing from several three Mr. Kee's 1983 claims. The first I'll address very briefly concerns the erroneous dismissal of the false arrest claim. The second and third issues relate to the dismissal of a malicious prosecution claim and a denial of fair trial claim, which I'm just going to refer to as with respect to the implication of Lanning, a little more weighty, you know. I'll try and devote more time to those. But I would suggest that the arguments are not really quite as complex as it may seem. With respect to false arrest, district court granted summary judgment on the false arrest claim on essentially on Devin Peck grounds, which is to say that the district court found that my client's statement to the officers when they arrive, you should lock me up for what I'm doing, not what I'm not doing, while holding dice and his acknowledgement that just prior to the officer's arrival, he had been playing dice, provided probable cause to arrest him for gambling. It did not. There were two fundamental errors here. The first is that the statement itself did not provide all the elements to arrest him for gambling. There's nothing illegal about rolling dice in public as long as you're not wagering anything of value. More importantly, there's no evidence that any of the defendants heard him make that statement. He says he made it. He assumes they heard him, but nothing in the paperwork, nothing in the deposition testimony, nothing in the record suggests the defendants heard him say that. They certainly didn't charge him with it, and they didn't mention it as a statement in the statement notice they provided to the prosecutors. So let me ask you a question about your first point. I understand your second point here. Kelly's response on that, but on the first point, couldn't you infer based upon his statement that it was, you know, he has a dice in his hand. He says you should arrest me for this. Why couldn't it be like a rational inference that it was for money, that he knew it was illegal? He was essentially acknowledging it was illegal, right? You're probably right, Judge. You're probably right. I'm not sure what the second point is. Why don't you turn to your, I'm sorry. No, that's okay. I understand the second point, but go ahead. Go to the malicious prosecution. Yeah, sure. So with respect to the malicious prosecution, the district court issued two aspects. The first I'll dispense with quickly, which was the probable cause issue. The district court found there was probable cause to support the prosecution and points to the claim by defendants that they saw a plaintiff in the car. He was smoking marijuana in the car. Then they found him standing next to the car with drugs in and that these facts were all undisputed. That is the court's statement in, I believe, the special appendix pages 17 and 18. And they say based on these undisputed facts, there's probable cause and that's enough. The problem is those facts were very much in dispute. Point five of our opening brief lays out that dispute. The defendants do not argue that the court says there was probable cause and these facts were undisputed. Is there a dispute that the cell phone was found in the car? Yes. That his cell phone was in the car? Yes. I believe so. Yes, your honor. I think he said the cell phone was taken from his pocket. But wasn't the issue that there were two cell phones, one in the car, one in the pocket? That's the claim. I think as far as I understand. Is that second claim, that is that there was a second cell phone in the car, was that disputed? Yes, but indirectly. And I mean it this way. He has denied being in that car, period, at all. The owner of the car, the driver of the car, Mr. Tavares has denied that my client was ever in that car. So by extension, if he's never been in that car by both of these men's perspectives, then the phone's not in the car. It was the question was never squarely presented in a way. Let me ask you this then. If there had been no dispute that that was his cell phone in the car, and they could dispute whether he was in the car, but that his cell phone was in that car, would that be enough to give Rice a probable cause? No, your honor. If not, why not? Because stepping back for a moment, the reason he was initially seized according to the police is they saw him in the car as he was driving. And he's smoking marijuana, and he's driving down the street. The officers see him and recognize him. And then they find him several blocks away, standing on the sidewalk, according to the police, next to the open window of the car. If those statements are false, then the fact that the phone was found in the car doesn't mean that it was in the car at that time, or he put it in the car that day. It doesn't bridge that gap. So all that does is show that for some reason, his phone was in the car. Now, that might be good evidence to the defense at trial. That might persuade the jury, but it's a weight issue. So if it's good evidence trial, then why doesn't it give Rice a probable cause? It allows them to argue that he shouldn't be believed when he says he wasn't in the car. It doesn't allow a court to conclude that it's undisputed that he was in the car that day. In other words, the court is saying that there was an undisputed evidence that he was in the car that day. And that takes Malpras off the table. And what we're saying is, if the only all that does is provide a basis for saying that at some point, someday he had been in the car, and it can allow a defense lawyer to argue a trial, you should not believe the plaintiff when he says he wasn't in the car that day. Why don't you turn, unless there are any questions from my colleagues, to the favorable termination issue, which I think you fronted for Sure. It's a little strange to talk about Lanning to the author of Lanning and his colleagues, but I'll start this way. I'm just a mere mouthpiece for the Second Circuit. Look at it that way. I'll try to do that, Your Honor. I'll start with the history of speedy trial in the context of favorable termination. It, as the court knows, this issue was first squarely decided in Murphy v. Linn in 1997. There's two aspects of the Murphy decision that are really, I think, warrant some discussion. The first is, what was the test applied by the Second Circuit in deciding Murphy in terms of the test as the Second Circuit views it today? And the second is, why did the court come down the way it did in Murphy? And starting with the first, the decision in Murphy was the favorable termination prong, or the test, was where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused for these purposes only when the final disposition is such as to indicate the innocence of the singleton. And it has been the standard ever since. It was the standard articulated by this court in Lanning. It was the standard articulated by this court last month in Ashley. And it has consistently been the standard. So the jumping off point is that the decision in Murphy that found speedy trial decisions favorable was flowing from the same standard that we use today. The second point... Can I just clarify, is your position that dismissals on speedy trial grounds qualify categorically as favorable terminations? Presumptively. Presumptively. It doesn't mean that they can't be rebutted by other evidence in the record, but presumptively. Because that was what Murphy said. Murphy didn't say... The plea offer at the time of the dismissal essentially could undo such a presumption, should that be what we determine is the law. What's your response to that? The fact that the prosecutor threw out a plea offer right before the case was dismissed shows that the government couldn't prove anything. What's your response to that? I'd say that that's just the prosecutor seeing if he can get a conviction before it gets dismissed. He knows it's going to be dismissed. It was for a violation, a conditional discharge. It wasn't... I think when you come back to Murphy, Murphy was very clear that it was looking at this broadly. I'm not saying that where there's a speedy trial dismissal, a district court in a particular case with particular facts can't still find that the decision's not favorable. I'm not suggesting that the court's constrained from doing that, but if you read Murphy, there's no such language that says in this case and only in this case or only when. It is pretty clear and it's followed up two years later in Poser. It's followed up three years after that in Fulton v. Robinson. It's very clear and these cases are all applying the same standard that is in place today. Before I get to Lanning, let me just talk for a moment about why the court came to the decision it did. I think with speedy trial decisions, it becomes this untenable choice for a criminal defendant. The criminal defendant's being prosecuted for a crime that the criminal defendant should not have been prosecuted for. The defendant wants to pursue at some point some kind of wrongful prosecution claim. The prosecution decides it cannot or will not proceed with the prosecution. So what's the defendant to do when it becomes untimely? Goes to court, the judge will entertain a motion to speedy trial, the prosecution will consent, and the criminal defendant is the one holding up the dismissal. The criminal defendant will have to fight the dismissal. No, no, keep going. Call me back in a month or two. Keep me locked up or keep me out on bail. So what you're articulating is the policy behind Murphy and the line of cases, I understand. And because what it does is it gives her her right to a speedy trial versus his or her right to be free from malicious prosecution. It's an untenable choice. Is there a single case that you were able to see or identify where a speedy trial dismissal was held not to be a favorable termination? Pre-landing or post-landing, Your Honor? Any case. I really, not that I'm aware of, Judge, before until the landing decision issue. Since then, the courts, district courts seem to be kind of all over the place with it, more or less equally. But after the Fulton v. Robinson decision, I didn't see anything. To the contrary, I'm not aware of it. I'm not saying conclusively there are none, but I'm not aware of it. Just following up on, I'm sorry. Go ahead. We have never, when we have found them to be favorable in Pazzer and Murphy, we've never had to send it back for more fact-finding on the circumstances surrounding. In other words, on this issue that Judge Abrams asked you about, whether there's a presumption. In other words, unless there's something in the record indicating, for example, the defendant said, I'm willing to plead, I'm guilty, right before the dismissal on speeding trial grounds, the presumption would be that it's favorable, right? That's what we've said multiple times. Yes, Your Honor. And I'm not aware of any remands or further fact-finding or any of those kind of conditional views of the favorable termination findings. And so- I'm confused as to why Lanning, at least on this issue, appears to have confused disreport judges, in part because I thought that we specifically said that the dismissal of a prosecution on speedy trial grounds is a favorable termination. And then we said, although neutral with respect to guilt or innocence, and Lanning was a very specific, arose out of a specific New York Court of Appeals decision. So what is it that post-Lanning district courts are pointing to? Well, I think, and different courts do different things. And so the very short thing I'd start with is that in this particular case, I think it's part of the problem with the key case is that the district court had zero discussion of Murphy or any of the other cases. It was as though it was an all-new issue. But in the cases that have been, that have engendered greater discussion from the district courts, and I may be reading this, this may just be my perspective. I think it's the indicative of innocence phrase that is subject to meanings. And I think the defendants have seen an opportunity, like the door is cracked open and they've charged through it. And it's become an argument now that if the dismissal doesn't seem to show actual innocence or some great likelihood of innocence, then it's not a favorable termination. And because speedy trials in that limited context are neutral in terms of you can't tell from this, so it's not favorable. And then it's the plaintiff's burden to show not only that it was a speedy trial violation, but the prosecution was motivated or unable to perceive for reasons that are driven by the plaintiff's innocence, which I think imbues Lanning with a meaning that it does not have. Even though there's that specific caveat. Okay. I do agree. I'm sorry, Judge, but I would just say I agree with you that in footnote six for Lanning, I thought it was quite clear that that part of the Smith-Hunter decision from the New York Court of Appeals, this court found that that was consistent with sort of fundamental common law principles, and that's why you affirmatively cited to Murphy v. Lanning. Yeah, it's okay. So we've kept you, I know that you've reserved two minutes for rebuttal Mr. Loomer. So maybe you'll be able to address the fair trial issue, but let's hear from Ms. Steiner for the appellees. Thank you, Ron. Good morning, Your Honors. Julie Steiner for the appellees. The central issue in this case, as we've already figured out, is whether the dismissal of plaintiff's criminal case on speedy prosecution and his fair trial claim. With respect to his malicious prosecution claim, this court on numerous occasions, including in Murphy, held that in order for a dismissal or a non-merits-based dismissal to be considered favorable, the plaintiff, the section 1983 plaintiff, must show affirmative indications of innocence. And the only way to do that is to look at the circumstances behind the dismissal, that it is a fact-intensive, context-specific inquiry. This court, as recently as March of this year, said the same thing in Ashley. That was the repeatedly and consistently recognized principle. Yes. Loomer identified the confusion, I think, in the district courts. Because there is that standard, they have analyzed it differently, whether or not speeding trial dismissals qualify or not. But under that standard, under that exact standard, in Murphy, we said, because of the reason Mr. Loomer indicated, because you don't want people to have to waive their constitutional right to a speedy trial, we're going to make that satisfy the indicative evidence test, even though on its face it may seem a little bit inconsistent to do that. That's what we decided in Murphy. That's what we said in Pazzo. That's what was in footnote six of Lanning. So under the same standard, consistently, we have said speeding trial dismissals qualify as indicative in a sense. So I'm just not sure I understand the argument. You're asking us to revisit that as if this is the first time this has ever come up. Your Honor, understanding all the points that you made, we're not asking this court to revisit because we believe all the cases, including Murphy, Poser, say what I just indicated, which is you need to look factually at the circumstances. Poser, for instance, was a 12B6 motion. And the court allowed the case to proceed at that stage on the ground that, yes, his speedy trial claim could be, for purposes of malprost claim, favorable termination. But it did say in a footnote, this court said, that we have no view on whether or not at a motion for summary judgment stage, a malprost claim could survive. The same thing in Murphy. In Murphy, this court did say generally under New York law, New York cases have held that it is a speedy trial dismissal could be or is generally a favorable termination. But the court specifically said the same thing that Lanning and even Ashley said, which is the answer to whether it is indicative of innocence depends on the nature and circumstances. And so in Murphy, the court had the background situation, had the hearing before the district court where there was an inquiry into the reasoning behind the termination on speedy trial grounds. So it's your position that unless the prosecution, when they dismiss on speedy trial grounds, says we don't have enough proof so that there's an affirmative indication that the reason for the speedy trial dismissal is an absence of proof, that it's not favorable. That's your view? No, no. What I'm saying is there needs to be some kind of increase. What we have here in our case, Your Honor, was the prosecution, as you noted earlier, offered a plea bargain. Right away said we're offering a plea bargain, which is some indication that it believed that there was something against this plaintiff, against this defendant. That plea bargain was a violation with a conditional discharge five seconds before the defense lawyer pointed out the time had run. So if that's enough, if a prosecutor can just throw out in a felony case a plea to a violation and claim later, as you are, that we could prove the felony, that seems pretty weak. It may be, Your Honor, but to say that in this particular circumstance, this is indicative of innocence, I don't believe this court can do that. I think what we have here is an indication that's neutral as to innocence, and in that situation, this cannot be deemed an affirmative indication of innocence. Because of the uniqueness of this constitutional right, we are going to, as he called it a presumption, we can even call it an inference. We're going to infer when there is a speedy trial dismissal that is indicative of innocence, that the prosecution didn't let the time run for no reason. They let it run because they couldn't prove it. And then, unless there's something indicating the other way to overcome that inference, then it's favorable. Am I misunderstanding what Murphy is suggesting? Is it generally it's favorable that there could be a situation where there's something in the record, usually not coming from the government, but maybe from the defendant that he was guilty? Well, I mean, this court and Murphy did analyze it strictly under New York law, which under Lanning, this court said, we're not bound by that. But putting that aside, also in Lanning in footnote six, we said the common law, citing the restatement, has the same rule. So Lanning was not relying on New York law for sure. I understand that. And the thing about that footnote, Your Honor, with it discussing the restatement and the different comments to that, the policy that Murphy, the underlying purpose of what Murphy discusses is, you don't want a defendant to have to choose. We're not asking a defendant to choose. The defendant in every situation can still raise a malicious prosecution claim as a section 1983 plaintiff. What we are saying is, and the comments to the restatement say, that automatically a speedy trial dismissal would not be an action of the defendant that would therefore take it out of favorable determination. But it does not ipso facto say that his assertion of a constitutional statutory privilege like 3030 automatically renders it to be favorable. What it is saying is it's not precluded. So all we are saying is that the defendant still must prove as it has, he must, as a malprause plaintiff, that it was favorable to him by affirmatively indicating. How's he supposed to do that? Sorry. That was my question. How's he supposed to do that as a practical matter? If it's going to be dismissed on speedy trial grounds, what is a defendant supposed to do? I think in these other cases, there have been depositions of the prosecution, that the prosecutor has been deposed. There's been a hearing on the issue. I don't think he's foreclosed from determining and figuring out what the situation is. Let's take a step back. If he's thinking about this already because he thinks he's innocent and there's been a speedy trial violation, as Mr. Wimmer pointed out, he would have to say to avoid this situation, he'd have to say, no, I'm going to go to trial on the felony because I want to get an acquittal so I can sue the city. That's what he'd have to do if we adopted your rule. I don't see that, Your Honor. I still see that at this 3030... How can he do it then? You're arguing right now because he didn't do that. He can't sue. So to avoid this argument by you, he would have to go to trial on the felony, notwithstanding the fact that he has a constitutional speedy trial argument or a statutory one for that matter. Yes. And he absolutely asserted this. And on our motion for summary judgment, we put forward the 3030 hearing. He then in opposition has numerous opportunities to show the presumption that it did not affirmatively indicate his innocence. He could, as I said, depose. He could bring forth witnesses. There's many, many things available to him. Yes, Judge. Can you explain them? I'm asking you to explain what we wrote. But, you know, I think that we contemplated precisely this issue in footnote six of Lanning because you seem to put a lot of emphasis on the neutrality principle here, I think. But neutrality, at least in the context of favorable termination law, seems to inure to the benefit of the plaintiff here under footnote six. So it says, is a favorable termination, although neutral with respect to guilt or innocence? Yes, Your Honor. I mean, the court was referring, in footnote six, it was the Smith-Hunter New York Supreme, a New York Court of Appeals decision, which is the non-inconsistent with it. Correct. So that was a very specific, so it only arises from that specific New York Court of Appeals decision, which trends away from the traditional common law. But you, my question then still stands, you seem to suggest, to me at least, that neutrality inures to the benefit of the government. But Lanning, and I think prior case law, has strongly suggested that neutrality, in fact, with respect to guilt or innocence, when we talk about favorable termination, inures to the benefit of the plaintiff in section 1983 claim. Your Honor, the way that I read footnote six in Lanning is that by citing to the restatement, which basically says that the principle of abandonment is not favorable, does not include terminations due to claims of... In other words, what I had indicated earlier, that all it does, it says that once a defendant raises his statutory privilege of 30-30, he's not precluded. That action does not preclude him from asserting a malicious prosecution claim the way it would, for instance, if he had bribed a witness or tampered with the grand jury, which is what the comments to the restatement indicate. Are you aware of a single case in which a speedy trial dismissal was held not to be a favorable termination? Other than some district court cases, Your Honor, and there are several of them that do read all of these decisions the way that the city does. I don't have a circuit case that does address that. We did cite a case, a district court case also that talks about another type of assertion of a statutory or constitutional privilege regarding a lineup and how that was not found to be a favorable termination. So my point is, is that your assertion of your and that's what the restatement says, take you out of, you know, it does not automatically render you unable to raise malprause. It just shows that you must then for do the second step, which this court in Lanning, Murphy, Poser, even Thompson as recently as 2020 and Ashley as well, as recently as March of this year, you must look to the certain, why else then would there be so many, so much language regarding context-specific factual inquiry? If that means nothing, it means that we must look behind the circumstances of the termination, including 30-30 dismissals. There are situations where it could be that the prosecution lost a witness, lost a file, as opposed to, oh, you know what, we really can't, you know, prosecute this guy, he's not guilty. And that's what Murphy suggested as well. When you looked at the behind the scenes situation, when there was that hearing. Am I right, just as a factual matter, that the plea offer, or the statement about a plea offer was made after the speedy trial clock had already expired? No. Well, it was made at the hearing and it was made just before the defense counsel raised 30-30. But was it, just I want a straight answer, if you would, was it, was it made after, based on your calculation, the speedy trial clock had already expired? Based upon the transcript that I have in the record, it seems as if it was raised, yes, at the time 30-30 had already expired. But there's no indication that it was raised because of that reason. I just believe that the prosecution, based upon the transcript, was ready to give him a plea bargain. And then once it was discovered, or once it was raised that 30-30 had been passed, that the case was at that point dismissed. And may I ask you another question, if you would? You don't seem to argue, you know, you heard from your friend on the other side about probable cause and the question and answers relating to that. But you don't seem to defend, at least with respect to the malicious prosecution claim, based on probable cause. Is that right? Yes, we did not argue that in our brief, Your Honor, yes. Is there a reason for that? We wanted to, I mean, we could have argued everything and made our brief about 75 pages long, but we felt that the most... I'm not asking for that. Right, but exactly. But we felt that our strongest argument was on favorable termination and then the probable cause with respect to the loitering with the purpose of gambling. Do you concede that there was error in that respect in light of the factual disputes concerning the information available to the officers at the time? For probable cause for the drugs? Yeah. We're not... I mean, again, we felt that our argument was the strongest on unfavorable termination. So, I mean, I know this court's precedent is if we don't argue it, we waive it, but we're not conceding, and nor did we ever say that we conceded that district court erred. We just thought that our strongest argument would be on favorable termination. Actually, our precedent is the contrary. If you're the appellee, if you don't waive it, we can affirm on any basis. But that's why I'm very interested in your answer to Judge Abrams's question. Do you concede error? That's a little different. We do not, Your Honor. We just wanted to focus the court's attention on favorable termination with respect to that issue. Unless there are any other further questions. I have one question about the... I want to talk about rolling dice for a minute. Yes. The argument that you heard they're making with respect to that is, obviously, under Devin Peck, there's probable cause for any crime or violation. That's sufficient. But the argument is that the officers, and in my experience, this is really unusual. I couldn't think of a case where I've seen this. The officers did not say they heard what he said, which I think, and you can correct me if I'm wrong, I think he would concede that just having the Dyson or him alone, if that's the only thing the officers had was he had Dyson, that would be probable cause. They need his statement. And the officer, I went back and looked at his deposition. He never mentioned anything about what Mr. King said. So isn't that a problem? Couldn't the jury conclude that there's no evidence that the officer heard whatever admission he made? I think the reasonable... When you have the plaintiff himself testify and admit that he said this to the officers, the reasonable implication is that the officers heard it. No question was raised to the officers as to what anything Mr. King said to him. But I think there's probable cause. It's objective evidence. He had Dyson in his hand. The search was conducted and he had $2,000 on him. You don't get to count $2,000, right? You'd have to have probable cause before the search, right? And there was probable cause to search based upon the drugs, which is where... Now I'm really confused. I'm sorry, Your Honor. I thought you're not relying on probable cause for the drugs for purposes of the arrest. You're relying on the loitering, right? Isn't your argument the reason that they could search him was the probable cause to arrest him for loitering, right? Right. But again, it goes back to... If we did not have any statement by the plaintiff himself admitting that he told this to the police officers, it doesn't... The reasonable inference, as you had indicated earlier to the plaintiff, was that they heard this and that based upon that, they were able to... I didn't say that. I didn't say... You misunderstood my question. I didn't say there was a reasonable inference that they heard it. I said, if they heard it, there's a reasonable inference that he was doing it for money. Yes. I apologize, Your Honor. I don't know that there's... I'm not sure. Like I said, it's a pretty unusual thing that if the city is relying on this as the basis of probable cause that you don't establish that in the deposition with the officer to confirm what he heard. So it's a little unusual, but I appreciate the answer. Thank you, Your Honor. All right. We'll hear from Ms. Sluman. Thank you. Thank you. Thank you, Your Honor. Very briefly, taking two seconds, with respect to whether the officers heard that statement or not, Your Honor, it's a disputed fact. They could make whatever arguments they wish at trial, but from a summary judgment perspective, there's a disputed question as to whether they heard it. And when you're resolving those disputes and drawing inferences in favor of the non-moving party, I think it's error to assume that they did hear it absent some affirmative evidence that they did. With respect to the fair trial claim, as this court undoubtedly knows, the McDonough... the statement by Judge Sotomayor in McDonough about favorable termination has led to all sorts of decisions. And there's a case or two cases, I believe, already pending before Your Honors or before the court. The one I'm most familiar with is Smalls v. Collins, and that raises the fundamental question as to whether favorable termination is a prong of a fair trial claim as well as a malicious prosecution claim. And that has already been argued before the Second Circuit, and I think we're just waiting on a decision. It wasn't part of our underlying motion practice, and it came up in the context of defendant's It shouldn't apply, and to the extent that the term favorable termination was utilized, I would suggest it refers more to a termination in a Heck the Humphrey context than in, say, a Lanning context. But assuming that, in fact, it does apply, then we would just rely on the same arguments. We would argue here that, well, it would be the same argument as in the malicious prosecution context. If we determined that this was favorable, we wouldn't have to address that issue in this case, right? That's correct. It would be moot. The other issue, there was a secondary basis, however, for the dismissal of the fair trial claim, which was this argument that the arrest reports and the signed criminal complaint were not competent evidence for purposes of a fabricated evidence claim. The district court found that the arrest reports and the criminal court complaint signed by one of the defendants were not competent evidence because they were inadmissible hearsay or would have been inadmissible hearsay at the criminal trial, and therefore, they don't establish fabrications. I think that's a line that's been rejected previously. As your honors know, Renthis v. Ruffin had treated statements that were made, written reports and so forth by correctional officers as evidence of fabrications. Coggins v. Bonoras and Judge Bianco is most familiar with it. Similarly, while it was not directly on point, the issue was would arrest paperwork and that sort of paperwork be competent evidence in terms of looking at the statements being communicated to prosecutors. The defendants, again, did not offer any arguments to support that aspect of the district court's dismissal of the fair trial claim. Again, it was a focus on whether or not favorable terminations were, in fact, a requirement. And again, I think that the absence of any defense by the defendants on that aspect of the ruling speaks volumes. If your honors have no further questions. As another housekeeping matter, it's the converse of what I asked Ms. Steiner. With respect to the probable cause inquiry in connection with the malicious prosecution claim, you don't actually make an argument that the search of the car and getting the cell phone was a violation of the Fourth Amendment. Is that correct? No. And it was therefore inadmissible. Is that right? Yeah, that argument was not raised. And it's, you know, from a criminal law standpoint, Mr. Key would have lacked standing anyway. But no, our argument is that I'm asking. I'm asking not in a criminal law standpoint. I'm asking about a civil lawsuit and a void, for example. So you didn't make the argument. No, no, we did not make that argument, your honor. Thank you very much. Unless there are any further questions from my colleagues, we will reserve decision and thank you.